**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ANN LEICHENTRITT,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **No: 04 C 6845** |
| | ) | |
| **DETECTIVE DICKEY, DETECTIVE BURGNER, OFFICER JASON HELLER, and THE VILLAGE OF OSWEGO, ILLINOIS,** | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Ann Leichentritt ("Leichentritt") commenced this action against the Village of Oswego, Illinois, ("Oswego"), Detectives Dickey and Burgner, and Officers Heller, Nehring and Sherwood of the Oswego Police Department. Plaintiff's Second Amended Complaint ("SAC") alleges, among other things, claims of excessive force under the Fourth Amendment and 42 U.S.C. § 1983, and state law claims of assault, intentional infliction of emotion distress, willful and wanton, civil conspiracy, respondeat superior and municipal liability under 745 ILCS 10/9-102. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants move to dismiss various counts of the SAC. The Court grants the Defendants' motion in part and denies it in part for the reasons discussed below.

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint, not the merits of the case. *Triad Assoc., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). The Court will only grant a motion to dismiss if "it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed.2d 80 (1957). When reviewing a motion to dismiss, the Court is restricted to reviewing the pleadings, which consist of the complaint, any attached exhibits, and the supporting briefs. *See Thompson v. Illinois Dept. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). In making its determination, the Court must assume the truth of the facts alleged in the pleadings, construe the allegations liberally, and view them in the light most favorable to the plaintiff. *Jet, Inc. v. Shell Oil Co.*, 381 F.3d 627, 629 (7th Cir. 2004).

## BACKGROUND

Plaintiff Ann Leichentritt is a citizen of the State of Illinois. On January 27, 2005, she filed a Second Amended Complaint against Detectives Dickey and Burgner, Officers Heller, Nehring and Sherwood, and the Village of Oswego, Illinois. The Oswego Police Department employed all named detectives and officers at the time of the relevant alleged events. (R. 20-1, SAC at ¶¶ 3-7).

**I.    Events of October 27, 2003**

At approximately 9:00 p.m. on October 27, 2003, Leichentritt was driving her car near Wolf Road and Route 30 in Oswego. (*Id.* at ¶ 12). Around that time, Detective Dickey began to follow her vehicle in an unmarked police car. (*Id.* at ¶¶ 13-14). He was not wearing a police uniform, (*Id.* at ¶ 21), and he did not activate flashing lights or sirens as he followed Leichentritt. (*Id.* at ¶ 15). He continued following her vehicle until she arrived home, at which point Leichentritt entered her garage and attempted to close the garage door behind her. (*Id.* at ¶¶ 18, 19). Detective Dickey exited his vehicle, prevented the garage door from closing, and followed Leichentritt into her garage on foot. (*Id.* at ¶ 20). Detective Dickey approached Leichentritt's

2

vehicle, and Leichentritt alleges that when she exited her vehicle Detective Dickey confronted her, cornered her in the garage and blocked her entry into her home. (*Id.* at ¶¶ 20, 22, 24). After he had cornered Leichentritt, Detective Dickey informed her that he was an Oswego police officer and that Leichentritt had been speeding. (*Id.* at ¶ 24). Leichentritt's husband then entered the garage and asked why Detective Dickey was in the Leichentritt's garage. (*Id.* at ¶ 25). After this inquiry, Detective Dickey left the premises. (*Id.* at ¶ 26).

Leichentritt alleges that she was not speeding on October 27, 2003, nor did she assault, threaten or provoke Detective Dickey in any manner. (*Id.* at ¶¶ 34-39). She further alleges that she suffered emotional and psychological injuries as a result of Detective Dickey's conduct. (*Id.* at ¶ 51).

## II. Events of October 28, 2003

On October 28, 2003, Detectives Dickey and Burgner and Officer Heller went to Leichentritt's place of work. (*Id.* at ¶ 28). Leichentritt was alone in the building when they arrived. (*Id.* at ¶ 30). Leichentritt alleges that the detectives and officer locked both the front and back doors of the building, struck her hand, threw her against a wall and manhandled her. (*Id.* at ¶¶ 30-31). The police officers then took her into custody, held her overnight, and charged her with aggravated battery for allegedly pushing Detective Dickey during the events of October 27, 2003. (*Id.* at ¶¶ 32-33). A court subsequently acquitted Leichentritt of the charge. (*Id.* at ¶ 33). Leichentritt additionally alleges that the officers denied her medical attention for the injuries sustained during the aforementioned interaction, (*Id.* at ¶ 52), which included contusions, swelling and numbness. (*Id.* at ¶ 51). Leichentritt further alleges that she did not assault, batter, threaten or provoke any of the police officers, or resist arrest, on October 28, 2003. (*Id.* at ¶¶ 40-44).

### III. Subsequent Events

For the purposes of her civil conspiracy count, Leichentritt includes allegations about subsequent interactions with the Oswego Police Department. On July 31, 2004, Officer Nehring arrested Leichentritt. (*Id.* at ¶ 54). He filed a complaint against her for aggravated battery, for allegedly scratching her husband and damaging a window in her home. (*Id.* at ¶¶ 55, 54). Leichentritt's husband did not file a complaint regarding the incident. (*Id.* at ¶ 55).

On November 5, 2004, the State charged Leichentritt with resisting a peace officer during the July 31, 2004, arrest. (*Id.* at ¶ 58). Leichentritt alleges that Officer Sherwood, who was not on the scene on July 31, 2004, signed and swore to this charge, rather than Officer Nehring. (*Id.* at ¶¶ 60-61). She claims that this charge was false. (*Id.* at ¶ 148). Leichentritt points out that Officer Nehring initiated this charge less than a month after her acquittal for the charges made on October 28, 2003, and after her filing of a civil rights action against Detectives Dickey and Burgner, Officer Heller, and Oswego. (*Id.* at ¶¶ 56-58). Leichentritt alleges that the officers charged her as a result of an agreement reached among the Defendant detectives and officers. (*Id.* at ¶ 148). This agreement consisted of a decision to cover-up alleged unlawful conduct by filing fraudulent claims against Leichentritt. (*Id.* at ¶ 147).

## ANALYSIS

On January 27, 2005, Leichentritt filed her SAC alleging 26 counts against multiple Defendants. Defendants Dickey, Burgner, Heller and Oswego challenge eleven of these counts in their present motion to dismiss. Specifically, Defendants move to dismiss the following counts against Detective Dickey based on the events of October 27, 2003: Count I (excessive force), Count V (assault), Count VI (intentional infliction of emotional distress), and Count XIII (willful and wanton conduct). Defendants also move to dismiss Counts VII, VIII, and IX, which

are intentional infliction of emotional distress counts against Dickey, Burgner, and Heller based on the events of October 28, 2003. Defendants also seek dismissal of Counts XXIII (willful and wanton conduct against Oswego), XXIV (civil conspiracy against all Defendants), and XXV and XXVI (respectively, respondeat superior and Local Government and Governmental Employees Tort Immunity Act claims against Oswego).

**I.      Excessive Force Against Dickey for the Events of October 27, 2003 (Count I)**

Detective Dickey moves to dismiss this claim of excessive force because Plaintiff has failed to allege either a seizure or the exertion of force by Dickey on October 27, 2003. The lack of force is dispositive in this instance, and so the Court will focus its attention on that point.

In her SAC, Leichentritt does not allege that Dickey had physical contact with her in any way. Although Leichentritt correctly notes that the Seventh Circuit has suggested that it may be possible to state a claim for excessive force without alleging actual physical contact, the court also emphasized that such a situation would be rare and most likely involve a display of force. *See McNair v. Coffey*, 279 F. 3d 463, 468 (7th Cir. 2002) ("use of a SWAT team to make a traffic stop could have consequences under the fourth amendment."). Relying on *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the *McNair* court reasoned that "there cannot be excessive force without some force." *Id*. at 467.

Leichentritt's allegations do not fall within this rare category of excessive force claims that may exist. Dickey's actions, taking Leichentritt's allegations as true, may have been frightening, but they did not involve the use of physical force or non-physical conduct so extreme or egregious as to qualify as excessive force. *See id.* at 466-67. Accordingly, the Court grants Defendant's motion to dismiss Count I.

## II. Assault Against Detective Dickey for the Events of October 27, 2003 (Count V)

Detective Dickey moves to dismiss Count V, which alleges assault based on the events of October 27, 2003. Detective Dickey asserts that Leichentritt has not alleged circumstances that would cause a reasonable person to fear imminent battery. The Court disagrees.

In Illinois, an assault is "conduct which places another in reasonable apprehension of receiving a battery." 720 ILCS 5/12-1(a). A plaintiff establishes a claim for civil assault when she alleges "an intentional, unlawful offer of corporal injury by force … under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent ability to effectuate the attempt if not prevented." *See* 720 ILCS 5/12-1; *see also Yang v. Hardin,* 37 F.3d 282, 286 (7th Cir. 1994); *Parrish by Bowker v. Donahue,* 110 Ill.App.3d 1081, 66 Ill.Dec. 860, 443 N.E.2d 786, 788 (Ill.App.Ct. 1982). Illinois courts have held that "words alone are not usually enough to constitute assault. Some action or condition must accompany those words before there is a violation of the statute." *People v. Floyd*, 278 Ill.App.3d 568, 570-71, 663 N.E.2d 74, 76 (Ill.App.Ct. 1996). The *Floyd* court also noted, "[i]t is not enough that the victim feels 'petrified' that the defendant is going to harm her. Such feelings must have a measure of objective reasonableness." *Id.* at 570. Thus, to establish a claim of assault, the plaintiff must allege both a threat of injury by force and an objectively reasonable belief that such injury was imminent. *Kijonka v. Seitzinger,* 363 F.3d 645, 647 (7th Cir. 2004).

Taking Leichentritt's allegations as true, Dickey followed Leichentritt in an unmarked car for several miles late in the evening. He followed her to her home, exited his unmarked vehicle and sprinted into Leichentritt's garage. At the time, Dickey was not wearing any visible indication that he was a police officer. Instead, he was wearing a grey sweatshirt and jeans. Dickey approached Plaintiff aggressively and cornered her, blocking her access into her home.

According to the SAC, it was not until after Leichentritt had been cornered that Dickey announced himself as a police officer and told her why he had followed her.

Although Leichentritt does not allege that Dickey made any verbal threats to her as he assertively approached her in the garage, when viewed in a light most favorable to Leichentritt, Dickey's aggressive physical approach could be construed as an imminent threat made through actions rather than words. *See Kijonka*, 363 F.3d at 647 (assault has long been defined as a threatening gesture which creates reasonable fear of injury). Furthermore, because Leichentritt did not know why Dickey had followed her and then cornered her late in the evening when she was alone, Leichentritt has alleged a reasonable belief that a battery was imminent. *See id.* Accordingly, the Court denies Defendant's motion to dismiss Count V.

### III.     Intention Infliction of Emotional Distress Counts (Counts V, VII, VIII and IX)

Next, Defendant Dickey moves to dismiss Count VI, which alleges intentional infliction of emotional distress ("IIED") based on the events of October 27, 2003. Defendants Dickey, Burgner, and Heller also move to dismiss Counts VII, VIII and IX, which allege intentional infliction of emotional distress based on the events of October 28, 2003. Defendants assert that Leichentritt has failed to allege extreme and outrageous conduct, intent to cause emotional distress and actual emotion distress resulting from the conduct.

"In order to state a cause of action for intentional infliction of emotional distress, a party must allege facts which establish that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; (3) the defendant's conduct in fact caused severe emotional distress." *Doe v. Calumet City,* 161 Ill.2d 374, 204 Ill.Dec. 274, 641 N.E.2d 498, 506 (Ill. 1994). Additionally, the emotional

distress claimed must be "so severe that no reasonable man could be expected to endure it." *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 660 (7th Cir. 2001). The Court may consider intensity and duration of distress when assessing its severity. *Public Fin. Corp. v. Davis*, 66 Ill.2d 85, 4 Ill.Dec.652, 360 N.E.2d 765, 769 (Ill. 1977); *see also Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993).

To establish the first element, a plaintiff must allege conduct "so extreme and outrageous that it goes beyond all possible bounds of decency." *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 623 (7th Cir. 1989). One measure of extreme and outrageous conduct is whether "an average member of the community" would feel resentment and exclaim "outrageous!" upon hearing of the conduct. *Doe*, 641 N.E.2d at 507. Abuse of a position of power may contribute to the outrageous nature of conduct. *Id*.

It is unclear whether Illinois requires a plaintiff to plead particularized facts in support of the second element – that the actor intended to cause emotional distress or knew that such distress was highly likely to result from his conduct. *See Doe*, 641 N.E.2d at 508; *but see Manuel v. Red Hill Cmty. Unit Sch. Dist. No. 10 Bd. of Educ.,* 324 Ill.App.3d 279, 288, 257 Ill.Dec.790, 754 N.E.2d 448, 459 (Ill.App.Ct. 2001) ("A plaintiff need not plead the evidentiary facts that he will use to prove the defendant's knowledge."). Nevertheless, when adjudicating state claims through the exercise of supplemental jurisdiction, federal courts apply the state's substantive law and federal rules of procedure. *Felder v. Casey,* 487 U.S. 131, 151, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); *Houben v. Telular Corp.*, 309 F.3d 1028, 1032 (7th Cir. 2002). Federal Rule of Civil Procedure 8(a), requires a short, plain statement of the facts sufficient to put the defendants on notice of a plaintiff's claims. *Brown v. Budz,* 398 F.3d 904, 908 (7th Cir.

8

2005). Therefore, Leichentritt need not plead the second element of her IIED claims with any particularity.

**A.     Defendant Dickey – October 27, 2003 (Count VI)**

Leichentritt alleges that Dickey followed her in an unmarked car for some time, and then entered her garage and confronted her.  The interaction was brief, and shortly after entering the garage Dickey announced his office and his reason for following Leichentritt.  This alleged behavior does not go "beyond all possible bounds of decency."  *See Public Fin.*, 360 N.E.2d at 767.

In her response to Defendant's motion, Leichentritt focuses at some length on the law surrounding abuse of a position of authority, suggesting that Dickey abused his authority as a police officer on October 27, 2003.  Leichentritt, however, also asserts that her fright stemmed from the fact that she did not know that Dickey was a police officer because he wore plain clothes and drove an unmarked car.  If she was unaware that he was a police officer, it is somewhat disingenuous to also argue that he was abusing his position of authority at the same time.

Because Leichentritt has failed to allege any extreme or outrageous conduct, the Court grants Defendant's motion to dismiss Count VI.

**B.     Defendants Dickey, Burgner, and Heller – October 28, 2003 (Counts VII, VIII and IX)**

Here, Defendants argue that Leichentritt has failed to allege conduct which satisfies the extreme or outrageous conduct requirement of her IIED claims.  The Court disagrees.

In her SAC, Leichentritt alleged that Dickey, Burgner, and Heller entered her place of work, locked all exits, proceeded to throw her against a wall, "manhandle" her, and then take her

into custody. She states that she neither provoked the officers nor resisted arrest. Leichentritt also alleges that she suffered physical injuries as a result of this treatment. Further, when she requested medical attention for these injuries, the officers refused her request. In addition, Leichentritt alleges that the aggravated battery charge filed against her on October 28, 2003, had no justifiable basis and that the officers arrested her without probable cause. As a result of these groundless charges, of which a court subsequently acquitted her, Defendants held Leichentritt in custody overnight.

Accepting Leichentritt's allegations as true and interpreting them in a light most favorable to her, Leichentritt has alleged extreme and outrageous conduct. *See Holder v. Ivanjack*, 39 F.Supp.2d 965, 970 (N.D.Ill. 1999). In *Holder,* the court denied the defendants' motion to dismiss an IIED claim because the officers in question attacked the plaintiff, yelled racial slurs at him, and then filed false battery charges against him. *Id.* The *Holder* opinion is instructive. Here, Leichentritt has alleged that similar conduct was extreme and outrageous, specifically, that the defendant officers entered her place of work, locked all exits, and proceeded to throw her against a wall, "manhandle" her, and then arrested her on what she alleges were false charges. Based on the totality of this alleged conduct, the Court concludes that the average member of the community would find that the police officers' actions were extreme and outrageous. *Id.*

Defendants further contend that Leichentritt failed to adequately allege that they intended to cause emotional distress or that such distress had actually resulted. In her SAC, Leichentritt included allegations that the police officers intended to inflict severe emotional distress. (R. 20-1, SAC at ¶¶ 85, 88, 91). She further alleges that she has, in fact, suffered such distress. (*Id.* at ¶¶ 86, 89, 92). These allegations establish the second and third elements of the cause of action.

10

Therefore, the Court denies Defendants' motion to dismiss the intentional infliction of emotional distress claims against Detectives Dickey and Burgner and Officer Heller based on the events of October 28, 2003.

## IV. Willful and Wanton Conduct Counts

In her SAC, Leichentritt brings a stand alone claim of willful and wanton conduct against Detective Dickey and the Village of Oswego. Leichentritt's allegations are premised on the fact there is a separate and independent tort of "willful and wanton" conduct in Illinois. Whether such a independent tort exists is subject to dispute, although the Illinois Supreme Court has concluded that willful and wanton conduct should be alleged in separate counts from negligence claims. *See Doe,* 641 N.E.2d at 504-06; *see also Moberg v. City of West Chicago,* 2002 WL 31398832, at *3 (N.D.Ill. Oct. 24, 2002). Since *Doe,* the Illinois courts have reviewed the independent tort of willful and wanton conduct in various contexts. *See, e.g., Floyd v. Rockford Park Dist.,* 291 Ill.Dec. 418, 823 N.E.2d 1004, 1009 (Ill.App.Ct. 2005).

The Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act") defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. Whether conduct is willful and wanton is ultimately a question of fact for the jury. *Suwanski v. Village of Lombard,* 342 Ill.App.3d 248, 276 Ill.Dec. 766, 794 N.E.2d 1016, 1023 (Ill.App.Ct. 2003)(citing *Doe,*161 Ill.2d at 390, 204 Ill.Dec. 274, 641 N.E.2d 498). To sufficiently plead a claim of willful and wanton conduct, a plaintiff must allege duty, breach, and proximate cause. *Floyd,* 823 N.E.2d at 1009. The plaintiff must also plead that "the defendant engaged in a course of action

11

that showed a deliberate intention to harm or an utter indifference to or conscious disregard for the plaintiff's welfare." *Id.* (citing *Doe,* 213 Ill.2d at 27-28, 289 Ill.Dec. 642, 820 N.E.2d 418).

### A.     Defendant Dickey – October 27, 2003 (Count XIII)

Leichentritt alleges the same facts in support of this claim as she did for the above claims of excessive force, assault and intentional infliction of emotional distress. Further, Defendants do not argue that Leichentritt failed to properly allege the elements of duty, breach, and proximate cause. Instead, Defendants contend that Leichentritt has failed to allege facts that Dickey's conduct demonstrated an utter indifference for her safety. Leichentritt, however, alleges that Dickey followed her car "aggressively" and without flashing lights on the night of October 27, 2003. (R. 20-1, SAC at ¶ 104(a)). Viewed in a light most favorable to Leichentritt, a jury could interpret this aggressive driving during the evening in an unmarked car without flashing lights as an utter indifference or a conscious disregard for Leichentritt's safety. The Court thus denies Defendants' motion to dismiss Count XIII.

### B.     The Village of Oswego (Count XXIII)

In support of Count XXIII, Leichentritt alleges no conduct other than the behavior of Oswego's police officers. Thus, Count XXIII essentially states a respondeat superior claim under the guise of a willful and wanton conduct claim. Several of the authorities on which Leichentritt relies consider respondeat superior claims and then consider the wanton and willful conduct of employees for the purpose of determining immunity, not for the purpose of stating an alternate ground for liability. *See, e.g., Matilla v. City of Belleville,* 184 Ill.App.3d 49, 132 Ill.Dec. 485, 539 N.E.2d 1291, 1291 (Ill.App.Ct. 1989); *LaMonte v. City of Belleville,* 41 Ill.App.3d 697, 355 N.E.2d 70, 78 (Ill.App.Ct. 1976). Leichentritt also refers to *Hampton v. City of Chicago*, 484 F.2d 602 (7th Cir. 1973), a Seventh Circuit case concerning municipal liability

12

for an employee's actions.  These cases do not support Leichentritt's contention that a municipal employer commits willful and wanton conduct when one of its employees commits such conduct.  Rather, these decisions involve whether the Tort Immunity Act protects the employer from liability.  *See, e.g., Hampton*, 484 F.2d at 610-11.  The lack of immunity opens the municipal employer up to respondeat superior liability, but these cases do not state that the municipal employer itself committed willful and wanton conduct.  *See id.*

Because Leichentritt alleges no independent conduct by Oswego, the Court grants Defendants' motion to dismiss Count XXIII.  Oswego's liability for the actions of its employees is appropriately grounded on respondeat superior, and the Court will consider it in relation to that claim below.

V.     **Respondeat Superior Against the Village of Oswego (Count XXV)**

Defendants suggest that because Leichentritt has incorporated 42 U.S.C. § 1983 claims in her respondeat superior count along with state law tort claims, the Court must dismiss the count because 42 U.S.C. § 1983 does not permit liability under respondeat superior.  Indeed, it is well-settled that municipalities do not have respondeat superior liability under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036; *Lawrence v. Kenosha County*, 391 F.3d 837, 843 (7th Cir. 2004).  As the Seventh Circuit and the Supreme Court have made clear, there are "three ways in which a municipality can be held liable under § 1983.  There must be: (1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well settled as to constitute a custom or usage with the force of law even though it is not authorized by written law or express policy; or (3) an allegation that a person with final policy-making authority caused the

13

constitutional injury." *Lawrence*, 391 F.3d at 844; *see also Monell*, 436 U.S. at 691, 98 S.Ct. at 2036. Leichentritt has not met any of these allegations.

*Monell* does not apply to state tort claims, however, and so does not preclude respondeat superior liability for such claims. Under Illinois law, an employer is liable for an employee's tort under the respondeat superior doctrine when the employee commits the tort within the scope of his employment. *Pyne v. Witmer,* 129 Ill.2d 351, 135 Ill.Dec. 557, 543 N.E.2d 1304, 1308 (Ill. 1989); *see also Peyton v. Winnebago County,* Case No. 99 C 50257, 2002 WL 1750767, *1 (N.D. Ill. July 26, 2002) ("partial shield from liability that Monell provides to municipalities applies only to § 1983 actions, not state law claims"). Defendants have not asserted that any of the alleged actions were outside of the officers' scope of employment. Furthermore, reading the SAC in a light most favorable to Leichentritt, the officers acted within the scope of their employment. *See Witmer*, 543 N.E.2d at 1308 (listing criteria for "within the scope of employment").

Therefore, the Court grants Defendants' motion to dismiss Count XXV with regard to Leichentritt's Section 1983 claims, but denies the motion with regard to her state law claims.

**VI.     Count Based on 745 ILCS 10/9-102 Against the Village of Oswego (Count XXVI)**

Oswego moves to dismiss Count XXVI, which alleges a separate cause of action based on Oswego's liability for the actions of its employees under Section 9-102 – a section of the Tort Immunity Act. Under Section 9-102, local public entities must pay tort judgments or settlements for compensatory damages if their employees, acting within the scope of their employment, are liable. *See Carver v. Sheriff of LaSalle County, Illinois,* 243 F.3d 379, 381, 382 (7th Cir. 2001). As the Illinois Supreme Court has noted, "the [Tort Immunity] Act grants only immunities and defenses. The Tort Immunity Act does not create duties, but merely articulates which of the

14

delineated immunities apply to certain common law duties." *Arteman v. Clinton Cmty. Unit Sch. Dist. No. 15,* 198 Ill.2d 475, 261 Ill.Dec. 507, 763 N.E.2d 756, 760 (Ill. 2002).

Leichentritt, however, relies on a Seventh Circuit opinion to support her claim that she may bring a separate cause of action based on Section 9-102. *See Wilson v. City of Chicago,* 120 F.3d 681 (7th Cir. 1997). In *Wilson*, the Seventh Circuit recognized in its decision, however, that Section 9-102 was applicable because the City of Chicago had respondeat superior liability for the actions of its employee, that is, liability was premised on respondeat superior and enforced via Section 9-102. *See id.* at 685. Furthermore, the City of Chicago had made clear to the parties that it did not plan to cover tort damages assessed against its employee. *Id.* Here, Oswego has made no such assertion.

Nevertheless, *Wilson* unequivocally states that a plaintiff need not wait until judgment against the individual officers becomes final before a plaintiff may proceed against the municipality under Section 9-102. *Id.* at 685; *see also Brown v. King,* 328 Ill.App.3d 717, 262 Ill.Dec. 897, 767 N.E.2d 357, 362-63 (Ill.App.Ct. 2001) (citing *Wilson* for proposition that plaintiff may maintain Section 9-102 claim against municipal employer before judgment against employee entered). Therefore, the Court denies Defendants' motion to dismiss Count XXVI, but notes that Leichentritt may only recover damages from Oswego if its employees are found liable in the first instance.

**VII.  Civil Conspiracy Count against All Defendants (Count XXIV)**

Defendants move to dismiss Count XXIV, asserting that Leichentritt has failed to adequately allege the elements of civil conspiracy. As the Seventh Circuit has noted, however, "the Supreme Court has recently reaffirmed, and we have held time and again, … there is no requirement in federal suits of pleading the facts or the elements of a claim…. Hence it is

15

enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002) (discussing pleading requirements for civil conspiracy claim under 42 U.S.C. § 1983). Leichentritt brings her civil conspiracy claim under state law, but because it is brought in federal court, the federal pleading standards apply. *Felder,* 487 U.S. at 151.

Under Illinois law, "[t]he elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston,* 209 Ill.2d 302, 310, 282 Ill.Dec. 837, 807 N.E.2d 461, 479 (Ill. 2004) (citation omitted). Leichentritt alleges that Detectives Dickey and Burgner and Officers Heller, Nehring and Sherwood formed an agreement some time between October 22, 2004 and November 5, 2004. (SAC at ¶¶ 57, 58, 147). Leichentritt alleges that these Defendants entered the agreement for the purpose of concealing unlawful acts on an earlier date, and that they effectuated the agreement through the false arrest of plaintiff. (R. 20-1, SAC at ¶¶ 147, 148). The SAC alleges both an unlawful purpose and unlawful means and alleges the tortious conduct of false arrest. Under the liberal federal pleading standards and accepting the her allegations as true, Leichentritt has stated a claim for civil conspiracy. The Court denies Defendants' motion to dismiss Count XXIV.

**CONCLUSION**

For the foregoing reasons, the Court grants the Defendants' motion to dismiss with respect to Counts I, VI, and XXIII. The Court denies the Defendants' motion with respect to Counts V, VII, VIII, IX, XIII, XXIV, XXV and XXVI.


Dated: April 28, 2005

                                **ENTERED**

                                _____
                                **AMY J. ST. EVE**
                                **United States District Court Judge**